UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THERESA LEE-WALLACE,                                      No.: 1:18-cv-5710

                        Plaintiff,

                                                    **COMPLAINT AND DEMAND FOR JURY TRIAL**

        -against-

THE BRIDGE INC.,

                        Defendant.
------------------------------------------------------------------X

      Plaintiff, THERESA LEE-WALLACE, by and through her attorneys, MARK DAVID SHIRIAN, P.C., complaining of the Defendant, respectfully alleges as follows:

      1.      This firm, MARK DAVID SHIRIAN P.C., represents Plaintiff THERESA LEE-WALLACE (hereinafter "Plaintiff" or "LEE-WALLCE") in connection with her claims against her former employer, Defendant THE BRIDGE INC., (hereinafter "THE BRIDGE") for age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 261, hostile work environment, and wrongful termination, pursuant to New York State Human Rights Law, New York Executive Law 290 et seq., and New York City Admin. Cod. §8-107.

**JURISDICTION AND VENUE**

      2.      This court has original federal question jurisdiction under 28 U.S.C. 1331 and 1343 because this case is brought for age discrimination, hostile work environment, retaliation, and wrongful termination, under Age Discrimination in Employment Act (ADEA), 29 U.S.C. Section 261, and other unlawful conduct. This Court has supplemental jurisdiction over Plaintiff's New York State Human Rights Law ("NYSHRL"), New York Executive Law 290 *et seq.*, N.Y. Exec. L 296 *et seq.* and New York City Admin. Cod. §8-107. claims as they are so related to the claims

in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue properly lies in the Southern District of New York pursuant to 28 U.S.C. 1391(b), because the claims arose in this judicial district and the defendant is doing business in this District.

## PARTIES

4. Plaintiff THERESA LEE-WALLACE is a 51 year-old African-American female. LEE-WALLACE resides in Kings County, City and State of New York.

5. At all relevant times, Plaintiff LEE-WALLACE met the definitions of an "employee" under all applicable statutes.

6. The Bridge, Inc. ("The Bridge") is a non-profit 501 (c)(3) organization that provides mental health and rehabilitation services, including supported housing, mental health and substance abuse treatment, case management, and job training and placement, to 2,300 vulnerable New Yorkers each year. The Bridge is located at 248 W. 108th Street, New York, NY 10025.

7. The Bridge was an employer of Ms. LEE-WALLACE at all relevant times to this action.

8. At all relevant times, The Bridge has met the definition of an "employer" under all applicable statutes.

## PROCEDURAL BACKGROUND

9. On or about December 2017, Plaintiff LEE-WALLACE filed a complaint against defendant The Bridge with the Equal Opportunity Commission ("EEOC") for age discrimination and assigned EEOC Charge No. 520-2018-01126.

10. On or about April 8, 2018, the EEOC issued a "Notice of Right to Sue" to Plaintiff LEE-WALLACE advising her of her right to file an action against defendants within 90 days of her receipt of the notice.

11. This lawsuit has been timely filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

12. Any and all other prerequisites to the filing of this suit have been met.

## FACTS

13. LEE-WALLCE was hired by the Bridge on May 15, 2002, as an Intensive Care Manger in the Bridge's Blended Case Management Programs in Queens, New York. She was over 40 years of age at the time of her hire. During the time of her employment with The Bridge, Ms. Lee-Wallace received outstanding verbal reviews.

14. At all times relevant to this action, Ms. Lee-Wallace exclusively utilized The Bridge equipment, including but not limited to, telephones, computers, stationery, fax machines and other facilities. The Bridge also maintained records of hours and directly supervised Ms. Lee-Wallace on a daily basis. As part of her duties as a care coordinator, Ms. Lee-Wallace was responsible for health and home rosters, health dash boards, plan of care, profile face sheet, and treatment plans.

15. As an Intensive Case Manager, she was responsible for monitoring client stability, medication compliance, program compliance; maintaining all clients charts and timely documenting services provided to clients.

16. Starting on or around April 1, 2012, the Blended Case Management began to be phased out and converted to a Care Coordination or Health Home Program, and Plaintiff's job title changed to Care Coordinator. The duties were similar to those in her previous job title although the program regulations were different in terms of number of visits, core service provision and required documentation.

17. Health Home guidelines required that each month, Plaintiff provide a core billable service from one of these six groups of core services: (1) comprehensive care management; (2) care coordination and health promotion; (3) comprehensive transitional care; (4) patient and family support; (5) referral to community and social support services; or (6) Use of Health Information Technology (HIT) to Link Services. In addition, Plaintiff was required to have a face-to-face visit with clients every other month and if a client was classified as "high risk", she was to see that client as often as necessary.

18. Timely documentation (notes written to document service provision within 24 hours of delivery of service) of services was an integral aspect of Plaintiff's position.

19. Although Plaintiff's job changed dramatically, Defendant never properly trained Plaintiff on her new role or how to input the information into the database pursuant to HIT.

20. Ms. Lee-Wallace and other staff members were forced to call on supervisors to assist with the computer system many times. However, the staff at The Bridge never tried to train

the older employees, including Ms. Lee-Wallace on how the modern portals work even though the Bridge promised Ms. Lee-Wallace training.

21. As a result, on September 16, 2015, Plaintiff was given a verbal warning for failure to maintain up-to-date documentation.

22. On December 19, 2016, Plaintiff was given a written disciplinary warning for her continued failure to timely document services provided to clients.

23. Ms. Lee-Wallace believes she was wrongfully terminated given that she had an outstanding performance record in her role. As such, Ms. Lee-Wallace believes that The Bridge engaged in unlawful conduct by terminating her employment because of her age.

24. In the course of performing the duties of her position, The Bridge discriminated against Ms. Lee-Wallace in violation of the ADEA by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Ms. Lee-Wallace because of her age.

25. On March 1, 2017, Plaintiff was suspended without pay for one day due to her alleged failure to timely document services provided to clients and her failure to meet arbitrary deadlines established to bring her documentation up to date.

26. On March 3, 2017, Plaintiff met with Mary McKie, when Plaintiff also made complaints of overwork. Often times, Ms. Lee-Wallace was forced to take her work home in order to complete tasks, as her job was more important and she feared losing her job. As a result, Ms. Lee-Wallace became a nervous wreck due to lack of sleep.

27. On March 20, 2017, Ebony Wooden, Clinical Supervisor, reviewed Plaintiff's documentation to assess her progress in completing her work. Ms. McKie met with Plaintiff and informed her that she had twenty-six client files with outstanding documentation and thirteen clients which she had failed to provide services to since March 1, 2017. Ms. McKie informed Plaintiff she had until March 31, 2017 to complete her outstanding work. She further informed Plaintiff that if she did not complete her work by the deadline, Defendant would have no choice but to terminate her employment.

28. Additionally, Ms. Lee-Wallace was made to feel very uncomfortable, since there were very strict dressed codes to adhere to at the office and the clinical supervisor, Ebony Wooden, was often dressed inappropriately with tight fitting clothing.

29. One time, Ms. Wooden bent over to pick something up on the floor and her bosom was exposed in Ms. Lee-Wallace's face. Ms. Wooden then asked Ms. Lee-Wallace why she was looking at her breast. Ms. Lee-Wallace then indicated that she does not appreciate such jokes.

30. Ms. Lee-Wallace was then informed during a meeting with her union and management at The Bridge Head Office that since she was working with The Bridge for so many years (15yrs), that she was old and stuck just knowing the old system. Ms. Lee-Wallace was then informed by Ms. Cheryl Silver that her job would get much harder and that maybe she should quit since because of her age she may not be able to function and get the job done.

31. During the time of her employment, Ms. Lee-Wallace's granddaughter was sexually molested. Ms. Lee-Wallace contacted the Director the next day to inform her of the dilemma. As a result, the Director allowed Ms. Lee-Wallace to take off the next day. When Ms. Lee-Wallace returned to work, her supervisor met with Ms. Lee-Wallace to discuss the incident.

During the conversation, her supervisor asked Ms. Lee-Wallace when she was going to resign from her job, since it became apparent that her job had become strenuous for her because of her age. Ms. Lee-Wallace then informed her supervisor that she was responsible for her granddaughter since she did not have parents in her life and that she had legal custody of her. As such, Ms. Lee-Wallace had to attend court sessions and therapy sessions with her granddaughter. Ms. Lee-Wallace also submitted a letter from her granddaughter's therapist indicating the importance of her attendance at the therapy. This letter was given to management and Ms. Lee-Wallace was approved to leave early on Thursdays by Ms. Cheryl Silver at 3pm. The hours missed were to be made up at the Herkimer residence every Wednesday, to which she was sent to the Herkimer residence to conduct enrolments of new consumers.

32. When the new director Ms. Rebecca King came to the job she made the decision that Ms. Lee-Wallace was no longer permitted to attend the appointments with her granddaughter since her "personal business was not part of her job description."

33. On July 10, 2017, Plaintiff's supervisor met with her and informed her that a s result of a CHN Home Health Audit, which took place in early 2017, a Corrective Action Plan was implemented for her client, SC.

34. The alleged "Corrective Action Plan" indicated six specific things that Plaintiff needed to complete by July 12, 2017 to bring SC's chart up to date.

35. On July19, 2017, Ms. Lee-Wallace got sick on the job but was harassed and accused by supervisors at The Bridge that she was wasting her time pretending to be sick. Ms. Lee-Wallace was then questioned whether her alleged illness had something to do with her granddaughter being sick or was it because of her age. Moreover, Ms. Lee-Wallace was advised that since the job will

be getting harder she most likely will not be able to carry out her job description and maybe she "should quit" or eventually she will be terminated.

36. As a result, Ms. Lee-Wallace began to cry and was informed by Ms. King that "tears won't save" her career and that she would not let her out of the office even after the EMS arrived after being called. The EMS personnel had to bang on the door and asked Ms. King what she was doing since it was apparent Ms. Lee-Wallace was distraught as her pulse and blood pressure was extremely high. Ms. Lee-Wallace was also shaking very badly and had to be taken out of the office by EMS to the hospital.

37. Ms. Lee-Wallace was unable to keep many of her medical appointments because she was denied the time off to attend her dental appointments and therapy appointments for her arm and shoulder.

38. On her return to work on Tuesday July 23, 2017, Ms. Lee-Wallace was accused by Ms. Rebecca King for being insubordinate since she did not return to work on Monday July 22, 2017. Ms. Rebecca King also informed Ms. Lee-Wallace that she will soon be terminated.

39. On the following day, a meeting was held regarding the need for purchasing items for the consumers. The staff was then instructed that no items should be purchased for the consumers since there is no money and that the staff should inform the consumers that "The Bridge does not have any money." Ms. Lee-Wallace then stated that it is difficult to inform the consumer that they could not receive what they ask for. Ms Wallace also stated that there is money from the state to address the customer's needs. However, the clinical supervisor Ms. Ebony Wooden got upset and informed Ms. Lee-Wallace after the meeting that she should met her in her office. Ms.

Lee-Wallace was then cautioned that if she continued to ask for items for the consumers that she would no longer have a job.

40. Later that week on July 27, 2017 at around 3PM, Ms. Lee-Wallace was terminated. Defendant claims that due to Plaintiff's "repeated failure" to timely perform and document the services she provided to her clients, her employment was terminated.

41. On the date of her termination, Ms. Lee-Wallace was given boxes to pack her items and leave. Ms. Lee-Wallace then informed both Ms. Rebecca King and Ebony Wooden that she did not need a box since she did not have any belongings to take out of the office. Ms. Lee-Wallace returned to her desk and Ms. Wooden took her hand and swiped all of her belongings on her desk into a box stating that this was Bridge property and that she should get her "old ass" out of the office when she attempted speak to the union representative Ms. Ashley Lytee.

42. Ms. Lytee was instructed to tell Ms. Lee-Wallace that she was unable to speak to her and then she was told to leave the office or that Ms. Lee-Wallace would be arrested by her girlfriend, who is a cop. Ms. Lytee she then proceed to contact her girlfriend whom is a cop stating "Babe, I need you to come to my office ASAP to remove this old bitch here."

43. Upon information and belief, two new employees were hired after Ms. Lee-Wallace to replace her, Sukaina- Jacquez and Kimona – Heath.

44. Ms. Lee-Wallace believes she was wrongfully terminated given that she had an outstanding performance record in her role as a Care Coordinator with The Bridge. As such, Ms. Lee-Wallace believes that The Bridge engaged in retaliatory conduct by terminating her employment because of her age. Moreover, upon information and belief, Ms. LEE-WALLACE

believes that she was treated poorly because of her age and that the disciplinary actions taken against her were pretextual.

45. Additionally, Ms. LEE-WALLACE believes she was replaced with employees significantly younger than her.

46. Moreover, Ms. LEE-WALLACE believes that she was retaliated against because of her age.

47. Plaintiff consistently excelled in her work at The Bridge.

48. In the course of performing the duties of her position, Plaintiff LEE-WALLACE was forced to endure a hostile work environment, which was severe and pervasive and altered her working conditions.

### FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF
### AGE DISCRIMINATION IN VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA), 29 U.S.C. SECTION 261
### (Brought against Defendant The Bridge)

49. Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

50. Plaintiff was over the age of 40.

51. Plaintiff was subjected to harassment, through words and actions, based on age.

52. The nature of the harassment was such that it created an objectively intimidating, hostile and offensive work environment.

53. Plaintiff alleges that Defendant The Bridge through its agents engaged in a pattern and practice of age discrimination against her with respect to the terms, conditions and privileges of her employment in violation of the ADEA.

54. As part of its pattern and practice of employment discrimination, Defendant The Bridge through its agents subjected Plaintiff to age discrimination and failed to take corrective action.

55. Defendant The Bridge knew or should have known about the age discrimination in the workplace.

56. Defendant The Bridge failed and refused to take appropriate action to end the age discrimination to which Plaintiff was subjected to, which was clearly a demonstration of bad faith.

57. That as a result of the discriminatory acts of Defendant The Bridge through its agents, Plaintiff's employment was terminated because of her age.

58. Defendant The Bridge's age discrimination against Plaintiff LEE-WALLACE was committed with reckless and callous disregard of her ADEA right to a workplace free from discrimination based on age.

59. As a result of Defendant The Bridge's unlawful conduct, Plaintiff LEE-WALLACE is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF
VIOLATION OF THE NYSHLR. EXEC. L. 296, *et seq.*
(Brought against Defendant The Bridge)**

60. Plaintiff repeats and incorporate by reference the allegations stated above as if they were set forth in full herein.

61. Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

62. In violation of NYSHRL, Defendant discriminated against Plaintiff on the basis of age by subjecting her to a hostile work environment that was severe or pervasive enough to affect the terms and conditions of her employment.

63. Defendant at all times relevant herein had actual and constructive knowledge of the conduct described above.

64. As a result of the discrimination perpetrated and maintained by Defendant and to Plaintiff and its failure to protect the Plaintiff from discrimination, Plaintiff suffered emotional distress.

65. Defendant violated the NYSHRL by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failing to act of the defendant as described above.

66. Defendant failed to comply with its duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

## THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF
## DISCRIMINATION AND HARASSMENT IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
**(Brought against Defendant The Bridge)**

67. Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

68. Defendant The Bridge has discriminated against Plaintiff in violation of the New York State Human Rights Law by denying her equal terms and conditions of employment, including but not limited, taking advantage of Plaintiff, because of her age.

69. Defendant The Bridge has discriminated against Plaintiff in violation of the New York State Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of her age.

70. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic damages, but not limited to, loss of past and future income, compensation and benefits.

71. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

**FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**AGE DISCRIMINATION IN VIOLATION OF**
**NEW YORK CITY ADMIN. COD. §8-107**
**(Brought against Defendant The Bridge)**

72. Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

73. Plaintiff alleges that the foregoing actions by Defendant violate the New York City Administrative Code § 8-107, in that Defendant discriminated against Plaintiff on the basis of age by subjecting her to a hostile work environment because of her age.

74. As part of its pattern and practice of employment discrimination, Defendant The Bridge through its agents subjected Plaintiff to age discrimination and failed to take corrective action.

75. Defendant The Bridge knew or should have known about the age discrimination in the workplace.

76. Defendant The Bridge failed and refused to take appropriate action to end the age discrimination to which Plaintiff was subjected to, which was clearly a demonstration of bad faith.

77. The Defendant's discrimination against Plaintiff was committed with reckless and callous disregard of her right to a workplace free from discrimination based on age.

78. As a result of the Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre-post judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays and respectfully requests that the Court enter judgment in her favor and against Defendant, containing the following:

a. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of New York.

b. Order Defendant The Bridge to institute and carry out policies, practices, and programs which eradicate the effects of its past and present unlawful employment practices;

c. Order Defendant The Bridge to make whole Plaintiff THERESA LEE-WALLACE, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, lost bonuses, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

d. Order Defendant The Bridge to make whole Plaintiff THERESA LEE-WALLACE, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

e. Order Defendant The Bridge to make whole Plaintiff THERESA LEE-WALLACE, by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, embarrassment, and isolation, resulting from the unlawful employment practices described above, in amounts to be determined at trial;

f. Order Defendant The Bridge to pay Plaintiff THERESA LEE-WALLACE, punitive damages for its malicious and reckless conduct described above;

g. Awarding Plaintiff reasonable costs and disbursement of this action, including her reasonable attorneys' fees; and

h. Grant such further relief as the Court deems necessary and proper in the public interest.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: June 22, 2018
      New York, New York

                                      Respectfully submitted,

                                      MARK DAVID SHIRIAN P.C.

By: _____
        Mark D. Shirian, Esq.
228 East 45th Street, Suite 1700B
New York, NY 10017
Telephone: (516) 417-0201
Email: mshirian@shirianpc.com

COUNSEL FOR PLAINTIFF